UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Aaron Young,** ) | **CASE NO. 1:14 CV 1475** |
| ) | |
| Plaintiff, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| v. ) | |
| ) | **Memorandum of Opinion and Order** |
| **Jeremy Ice,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

### INTRODUCTION

*Pro se* Plaintiff Aaron Young filed this action under 42 U.S.C. § 1983 against Lorain Correctional Institution ("LORCI") Correctional Officer Jeremy Ice, LORCI Director of Food Service Corrine Schonebeck, and LORCI Assistant Director of Food Service Raymond Natal. He filed an Amended Complaint on September 22, 2014. In his pleadings, Plaintiff claims the Defendants harassed him for wearing his kufi without a hairnet while working in the food service area. He seeks compensatory and punitive damages.

### BACKGROUND

Plaintiff was an inmate at LORCI, assigned to work in the food service area. The Ohio Department of Rehabilitation and Correction ("ODRC") Food Service Manual requires workers to wear hair covers but restricts those authorized covers to the ODRC issued ball caps, white

paper caps, bouffant caps and hairnets. (ECF No. 1-1 at 4). Plaintiff alleges that while he was at work during the week of September 10, 2013, Schonebeck stopped him and instructed him to cover his religious headgear (kufi) with a hairnet. He indicated to Schonebeck that he had received permission from the prison's administration in 2011 to wear his kufi without covering it with a hairnet. At that point, Lieutenant Lloyd walked by and the question was posed to him. Plaintiff claims Lloyd confirmed he was permitted to wear the kufi and was not required to cover it with a hairnet.

Plaintiff alleges that three months later, on December 11, 2013, Schonebeck asked another food service employee to instruct Plaintiff to cover his kufi with a hairnet while he was in the food service area. Plaintiff went to Schonebeck and reminded her of Lieutenant Lloyd's statements. Plaintiff asked Schonebeck why she chose to ask him to remove his headgear when she did not make similar requests to other inmates wearing ball caps or skull caps. Plaintiff claims he was told to worry about himself, not other inmates.

Later that day, Officer Ice called Plaintiff into the staff office and told him to cover his kufi with a hairnet or go to segregation for refusing a direct order to work. Plaintiff told Ice he arrived fifteen minutes early for work, and because his shift had not started, he could not be charged with refusing to work. He threatened to report Ice to Captain Wright. Ice handcuffed him and took him to Captain Wright's office. Captain Wright reported to Ice that Plaintiff was permitted to wear his kufi to work as a head covering and was not required to wear a hairnet.

Plaintiff claims he reported to his food service assignment the next day, December 12, 2013, and was confronted by Natal who told him to cover his kufi with a hairnet. He told Natal that Captain Wright approved his wearing of his kufi as a head covering. He also pointed to

employees with facial hair who were not wearing beard guards, and employees whose bangs and longer hair were sticking out of their hairnets.  He questioned why they were not being disciplined.  Natal escorted Plaintiff to the staff office where Schonebeck informed Natal of Captain Wright's decision.  Plaintiff was permitted to wear his kufi without covering it with a hairnet.

Although Plaintiff obtained the relief he requested, he continued to argue his point with Natal.  Later that day, Plaintiff witnessed dock workers walking between the back docks and the food preparation area wearing skull caps without hairnets.  Plaintiff approached Natal in the food service area, pointed out the offending inmate workers and asked Natal why he was not insisting the dock workers cover their skull caps with hairnets.  Natal told him to "leave it alone."  (ECF No. 1-1 at 3).

Plaintiff did not heed this advice.  A little while later, Plaintiff again approached Natal to complain about hairnet infractions of other inmates.  This time, Natal was talking to the cook when Plaintiff approached.  In the presence of the cook, Plaintiff pointed out that the cook had prepared the entire meal with his hairnet only partially covering his hair.  Natal repeated his request for Plaintiff to "leave it alone," and asked Plaintiff, "What do you want me to do? Write him a ticket and say that I told him five times to put on a hairnet and he didn't?"  (ECF No. 1-1 at 3).

The next day, Plaintiff contends he was approached by other inmates who told him Natal had passed out beard guards to all employees with facial hair.  They reported that when the inmates complained about wearing the beard guards, Natal informed them that if they were unhappy they could blame Plaintiff because if Plaintiff saw them without the proper hair

coverings he would report them. (ECF No. 1-1 at 3). Plaintiff brought this information to the attention of Lieutenant Binion, who indicated to Plaintiff he would talk with Natal. Plaintiff filed grievances pointing out that other inmates were wearing partial hairnets, failed to wear beard guards, or wore non-conforming head coverings and were not disciplined. He was told he was permitted to wear his kufi without a hairnet, and there was no need for him to continue to point out issues with other inmates. Plaintiff contends he was involved in two physical altercations with two inmates who were dissatisfied that he complained about their improper hair or beard coverings.

Plaintiff asserts three causes of action. First, he claims Schoneback and Natal denied him equal protection in violation of the Fourteenth Amendment when they asked him to cover his kufi with a hairnet, but did not ask other inmates with ball caps or skull caps to do the same. Second, he asserts two claims for retaliation in violation of the First Amendment. He asserts he argued back to Ice and Ice retaliated against him by placing him in handcuffs and taking him to Captain Wright. He also asserts he confronted Natal about singling him out to remove his cap and Natal retaliated against him by labeling him as a "snitch." Finally, Plaintiff claims Natal violated his Eighth Amendment rights by labeling him as a "snitch."

**STANDARD OF REVIEW**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### DISCUSSION

**I.**     **Equal Protection**

Plaintiff first asserts Schoneback and Natal denied him equal protection in violation of the Fourteenth Amendment when they asked him to remove or cover his kufi, but did not ask other inmates with skull caps or baseball caps to do the same. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681

-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiff has not alleged facts to demonstrate disparate treatment. He claims he was told to cover his kufi with a hairnet while other inmates were not told to cover their ball caps or their skull caps. Plaintiff, however, was not required to wear a hairnet over his kufi. He presented his argument to the prison administration and the administration ruled in his favor. He was treated the same as the other inmates with ball caps or skull caps. To the extent his claim is based on the fact that he was asked to use a hairnet when other inmates were not asked, his claim is without merit. Where the conduct at issue consists solely of speech, there is no equal protection violation. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999).

## II.     Retaliation

Plaintiff next asserts claims for retaliation in violation of the First Amendment against Ice and Natal. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that protected conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th

Cir. 1999).

Both of Plaintiff's retaliation claims fail to establish he was engaged in conduct protected by the First Amendment. *Id.* at 394-95.  Plaintiff first claims Ice retaliated against him because Plaintiff argued with Ice and threatened to report him to Captain Wright.  He claims Natal retaliated against him after Plaintiff verbally confronted Natal and argued with him about the appearance of other inmates.  While prisoners have a clear right protected by the First Amendment to file formal grievances against prison officials, *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010), arguing with corrections officers, or being insolent or disrespectful toward corrections officers is not conduct protected by the First Amendment. *See, e.g., Goddard v. Kentucky Department of Corrections*, Nos. 99–5348 and 99–5971, 2000 WL 191758 at *2 (6th Cir. Feb.7, 2000) ("[plaintiff prisoner's] cursing to correctional officials and complaining about treatment he received ... is not an activity protected under the First Amendment"); *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986) (prison regulation prohibiting inmates from "being disrespectful to any employee" and from using "vulgar, abusive, insolent, threatening, or improper language toward any other resident [i.e., inmate] or employee" did not violate the First Amendment, in light of paramount need for prison discipline and control of violence); *Thomson v. Spitter*, No. 1:12cv534, 2014 WL 235485, at *11 (W.D. Mich. Jan. 22, 2014).  Plaintiff did not have a constitutionally protected right to argue with Ice or to seek out Natal on two occasions to confront him about the appearance of other inmates, particularly after his own issue with his kufi was settled.  Without protected conduct, there can be no First Amendment violation.

Moreover, even if Plaintiff had met the first criteria, he has not alleged facts to suggest

-7-

that he suffered an adverse action.  An adverse action is one that is " capable of deterring a person of ordinary firmness" from exercising the constitutional right in question.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).  Plaintiff does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).  Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct.  *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398.  Certain threats or deprivations, however, may be so *de minimis* that they do not rise to the level of being constitutional violations.  *Id.*

Plaintiff alleges Ice handcuffed him and took him Captain Wright's office.  This is not an adverse action capable of deterring a person of ordinary fitness from engaging in protected conduct.  Plaintiff indicated to Ice that he would report Ice to Captain Wright and Ice escorted him to Captain Wright's office.  Captain Wright told Ice Plaintiff did not have to cover his kufi and released him.  No adverse action was taken against the Plaintiff and he obtained the relief he was seeking.

Plaintiff contends Natal called him a "snitch."  Plaintiff, however, on several occasions approached Natal in the presence of other inmates, complained publically that those inmates were not wearing proper head covering, and inquired why Natal was not disciplining them. Although Natal may have handed out beard guards and hairnets as a result of his confrontations with Plaintiff and may have told the complaining inmates to thank Plaintiff for the stricter enforcement of the rules, Plaintiff's own actions in the presence of other inmates already enlightened them to probable source of the improper hair covering complaints.  The adverse affect of Natal's statement was *de minimis* as Plaintiff openly engaged in his "informant"

-8-

activities.

## III. Eighth Amendment

Finally, Plaintiff claims Natal violated his Eighth Amendment rights by labeling him as a "snitch." The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,175* F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute serious health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A Plaintiff must first plead facts

which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Prison officials have an affirmative duty under the Eighth Amendment to protect inmates from violence perpetrated by other prisoners, and labeling an inmate as an informant may place an inmate in danger of assault from other inmates. *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir.2001); *Comstock v. McCrary*, 273 F.3d 693, 699, n. 2 (6th Cir. 2001). However, in this case, Plaintiff publically pointed out other inmates with hair covering infractions, in the presence of those inmates, and inquired of Natal why they were not being disciplined. Plaintiff's identity as the informant was never concealed. Any additional indication the inmates received from Natal that Plaintiff was the source of the complaints about their noncompliance with hair covering regulations was cumulative, at best. Natal's actions do not rise to the level of an Eighth Amendment violation.

Moreover, the subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Wilson*, 501 U.S. at

-10-

302-03.  Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835.  An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 837.  This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  In this case, there are no facts which plausibly suggest Natal was aware that his comments could place Plaintiff in more danger than he was already in given Plaintiff's own comments in the presence of other inmates.  He fails to satisfy the subjective element of his claim.

Finally, to state a claim for deliberate indifference under the Eighth Amendment in the Sixth Circuit, there must be some resulting harm stemming from the Defendant labeling Plaintiff as a "snitch" or an informant.  *See Thompson v. Mich. Dep't of Corrections*, No. 01-1943, 2002 WL 22011 (6th Cir. Jan. 2, 2002)(affirming district court's dismissal where "[plaintiff's] claim that he was endangered by being labeled a snitch was unsupported by any allegation of resultant harm").  In this case, Plaintiff does not allege any resulting harm.  He contends he was in two different physical altercations with two different inmates as a result of this incident.  He provides no factual allegations regarding these altercations.  There is no indication of when they occurred, how they occurred, who was the initial aggressor, or how they were resolved.  Aside from saying that the altercations were prompted by the inmates' perception of Plaintiff as a "snitch," he does not allege facts to suggest Natal's actions, not his own, motivated the altercations and does not indicate whether he was injured.  He fails to state a

claim for relief under the Eighth Amendment.

## CONCLUSION

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge

Dated: 2/4/15